UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PHYLLIS A. STAFFORD,
    Plaintiff,

v.                             C.A. No. 19-270-JJM-PAS

CSL PLASMA, INC.,
    Defendant.

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

The plaintiff, Phyllis A. Stafford, seeks to hold her former employer liable for violating R.I. Gen. Laws § 28-6.5-1 ("Drug-Testing Statute")[1] by firing her for failing drug and alcohol tests. The defendant, CSL Plasma Inc., has moved for judgment on the pleadings, asking the Court to dismiss Ms. Stafford's Complaint. ECF No. 16. The Court DENIES Defendant's motion for the following reasons.

I.     BACKGROUND

The Court begins with a recitation of the necessary facts pleaded by Ms. Stafford in the light most favorable to her. The Court accepts as true all well-pleaded facts from Ms. Stafford's Complaint (ECF No. 1) and draws all reasonable inferences in her favor. *Doe v. Brown Univ.*, 896 F.3d 127, 130 (1st Cir. 2018) (quoting *Kando v. R.I. State Bd. Of Elections*, 880 F.3d 53, 58 (1st Cir. 2018)). Further, the Court "supplement[s] those facts by reference to documents incorporated in the pleadings."

---

[1] The fully statute is attached as Exhibit A

*Kando*, 880 F.3d at 56 (quoting *Jardin De Las Catalinas Ltd. P'Ship v. Joyner*, 766 F.3d 127, 130 (1st Cir. 2014)).

### A. Factual Allegations

Ms. Stafford worked for CSL Plasma for about a year as a phlebotomist. ECF No. 1 at 4. CSL Plasma ordered Ms. Stafford to have a drug and alcohol test as a condition of continued employment. *Id.* Concentra Medical Centers performed the breathalyzer and urine test. ECF No. 4 at 2.

While awaiting the results of Ms. Stafford's urine test, CSL Plasma received the results of Ms. Stafford's breath test. ECF No. 16 at 2. CSL Plasma states that Ms. Stafford's breathalyzer test showed she had a blood alcohol content of 0.94, which was above the legal driving limit of .080. *Id.* According to CSL Plasma, it fired Ms. Stafford because of the results of the breathalyzer test. *Id.* Five days later CSL Plasma received the results of Ms. Stafford's urine test, which was positive for marijuana and benzodiazepines. *Id.*

### B. Procedural History

Ms. Stafford filed a complaint against CSL Plasma asserting that it violated the Drug-Testing Statute by firing Ms. Stafford for failing drug and alcohol tests. ECF No. 1. CSL Plasma answered the complaint. ECF No. 4. CSL Plasma then filed this Motion for Judgment on the Pleadings (ECF No. 16), Ms. Stafford objected (ECF No. 19), and CSL Plasma replied. ECF No. 21.

II.  STANDARD OF REVIEW

A party can move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), and such a motion "bears a strong family resemblance to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Kando*, 880 F.3d at 58. Courts treat these motions similarly in terms of the standard of review; they are subject to the sufficiency of the factual pleadings needed to survive them. *See Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54 (1st Cir. 2006).

Because a Rule 12(c) motion for judgment on the pleadings mirrors the standard of a Rule 12(b)(6) motion so closely, in reviewing the merits of the pleadings, *Ashcroft v. Iqbal* controls the Court's analysis. 556 U.S. 662 (2009). The Court is compelled to accept all factual allegations as true without crediting any conclusory legal allegations. The First Circuit has further held that a court may only grant a Rule 12(c) motion if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Currans v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)).

III.  DISCUSSION

This Motion for Judgment on the Pleadings hinges on whether the Drug-Testing Statute applies to Ms. Stafford's termination because of a breathalyzer reading. The Court "must adhere to the settled principle of construction that when a statute is unambiguous on its face and expresses a clear and sensible meaning," the statute must be interpreted "according to the plain and literal meaning of the

language contained in the statute." *Providence Journal Co. v. Sundlun*, 616 A.2d 1131, 1135 (R.I. 1992); *Cahoon v. Shelton*, 647 F.3d 18, 22 (1st Cir. 2011).

The Drug-Testing Statute applies to the testing of an employee's "urine, blood or other bodily fluid or tissue." R.I. Gen. Laws § 28-6.5-1(a). While the Court agrees with CSL Plasma that the Drug-Testing Statute is unambiguous, the Court finds the legislature's inclusion of "or other bodily fluid or tissue" opens the door for Ms. Stafford's complaint.

As Ms. Stafford outlines, the Rhode Island legislature has adopted a statute for regulating the use of drug and alcohol testing by employers. ECF No. 19 at 5. While blood and urine testing are specifically mentioned, the regulation also applies to "other bodily fluid or tissue." Ms. Stafford alleges that the breathalyzer tested her bodily fluids and is thus covered under the statute. ECF No. 19 at 7. Since she has alleged that the breathalyzer CSL Plasma caused to be administered to her tests bodily fluids, the Court accepts that fact as true at this stage of the litigation. *Id.* Ultimately, it will be up to Ms. Stafford to prove that fact.

In these pandemic times we are reminded that the Center for Disease Control ("CDC") has coined the term "spatter," which are visible drops of liquid or body fluid that are expelled forcibly into the air by coughing, talking, or sneezing and settle out quickly and remain airborne indefinitely. CDC Infection Protection Glossary.[2]

---

[2] *See* Division of Oral Health, National Center for Chronic Disease Prevention and Health Promotion, Glossary of Terms for Infection Prevention and Control in Dental Settings, https://www.cdc.gov/oralhealth/infectioncontrol/glossary.htm#S (Sept. 4, 2020).

4

Additionally, while an expert cannot offer a legal opinion about the law, an expert may offer an opinion on disputed facts based on the expert's specialized knowledge. *See United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008); Rule 702, Fed. R. Evid. Here, as the Drug-Testing Statute is unambiguous, Ms. Stafford's expert would only be giving an opinion that breath used in a breathalyzer test contains vapor, and the vapor is a bodily fluid. ECF No. 19 at 7.

Lastly, CSL Plasma argues that Ms. Stafford cannot rely on "allegedly technical violations of the Drug-Testing Statute because she cannot prove damages" and therefore there is no case or controversy. ECF No. 21 at 2. Article III of the U.S. Constitution requires three requirements for a dispute to qualify in federal courts, one of which is an injury in fact. *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 331 (1st Cir. 2020). An "injury in fact" is defined as the "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent,' not conjectural or hypothetical." *Spokeo, Inc v. Robins*, 136 S. Ct. 1540, 1547-48 (2016). CSL Plasma fired Ms. Stafford after it received the results of the tests. ECF No. 1 at 9. Considering CSL Plasma fired Ms. Stafford from her position, Ms. Stafford's loss of employment and monetary compensation from her employment is her injury in fact. *Id.* Ms. Stafford's termination was actual, particular, and concrete and not merely a hypothetical consequence of CSL Plasma's alleged non-adherence to the Drug-Testing Statute. *Id.* So, Ms. Stafford's complaint is not simply alleging a procedural violation by CSL Plasma—giving Ms. Stafford standing in this Court.

## IV. CONCLUSION

At this early stage of the litigation, Ms. Stafford has alleged enough facts to survive CSL Plasma's Motion for Judgment on the Pleadings. For all the reasons stated above, the Court DENIES CSL Plasma's Motion for Judgment on the Pleadings. ECF No. 16.

IT IS SO ORDERED,

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

September 14, 2020

EXHIBIT A

Testing permitted only in accordance with this section

(a) No employer or agent of any employer shall, either orally or in writing, request, require, or subject any employee to submit a sample of his or her urine, blood, or other bodily fluid or tissue for testing as a condition of continued employment unless that test is administered in accordance with the provisions of this section. Employers may require that an employee submit to a drug test if:
    (1) The employer has reasonable grounds to believe based on specific aspects of the employee's job performance and specific contemporaneous documented observations, concerning the employee's appearance, behavior or speech that the employee may be under the influence of a controlled substance, which may be impairing his or her ability to perform his or her job;
    (2) The employee provides the test sample in private, outside the presence of any person;
    (3) Employees testing positive are not terminated on that basis, but are instead referred to a substance abuse professional (a licensed physician with knowledge and clinical experience in the diagnosis and treatment of drug related disorders, a licensed or certified psychologist, social worker, or EAP professional with like knowledge, or a substance abuse counselor certified by the National Association of Alcohol and Drug Abuse Counselors (all of whom shall be licensed in Rhode Island)) for assistance; provided, that additional testing may be required by the employer in accordance with this referral, and an employee whose testing indicates any continued use of controlled substances despite treatment may be terminated;
    (4) Positive tests of urine, blood or any other bodily fluid or tissue are confirmed by a federally certified laboratory by means of gas chromatography/mass spectrometry or technology recognized as being at least as scientifically accurate;
    (5) The employer provides the test to the employee, at the employer's expense, the opportunity to have the sample tested or evaluated by an independent testing facility and so advises the employee;
    (6) The employer provides the test to the employee with a reasonable opportunity to rebut or explain the results;
    (7) The employer has promulgated a drug abuse prevention policy which complies with requirements of this chapter; and
    (8) The employer keeps the results of any test confidential, except for disclosing the results of a "positive" test only to other employees with a job-related need to know, and to defend against any legal action brought by the employee against the employer.

(b) Any employer who subjects any person employed by him or her to this test, or causes, directly or indirectly, any employee to take the test, except as provided for

by this chapter, shall be guilty of a misdemeanor punishable by a fine of not more than one thousand dollars ($1,000) or not more than one year in jail, or both.

(c) In any civil action alleging a violation of this section, the court may:
    (1) Award punitive damages to a prevailing employee in addition to any award of actual damages;
    (2) Award reasonable attorneys' fees and costs to a prevailing employee; and
    (3) Afford injunctive relief against any employer who commits or proposes to commit a violation of this section.

(d) Nothing in this chapter shall be construed to impair or affect the rights of individuals under chapter 5 of this title.

(e) Nothing in this chapter shall be construed to:
    (1) Prohibit or apply to the testing of drivers regulated under 49 C.F.R. § 40.1 et seq. and 49 C.F.R. part 382 if that testing is performed pursuant to a policy mandated by the federal government; or
    (2) Prohibit an employer in the public utility or mass transportation industry from requiring testing otherwise barred by this chapter if that testing is explicitly mandated by federal regulation or statute as a condition for the continued receipt of federal funds.
    (3) Prohibit an employer in the highway maintenance industry, which shall include the construction, upkeep, maintenance and repair of the state's highways, roads and bridges including the repaving or resurfacing of the same, from requiring testing otherwise barred by this chapter, provided the testing is performed as regulated under 49 C.F.R. part 40.

(f) Notwithstanding the foregoing, this chapter shall not apply to members of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers and its signatory contractors jointly participating in the IMPACT National Substance Abuse Program for purposes of pre-qualifying workers for employment on and ensuring the maintenance of designated drug free work sites; provided, however, that:
    (1) Participation by each worker is voluntary; and
    (2) Workers who refuse to participate shall not be subjected to any adverse employment action other than an inability to work on a designated drug free work site; and
    (3) The penalty for a first "positive" test shall not exceed a thirty (30) day suspension from work on designated drug free work sites.

R.I. Gen. Laws Ann. § 28-6.5-1

8